UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 12 - 04714**

------------------------------------------------------------------ x

DESMOND DAVIS,

**COGAN, J.**

Plaintiff,

COMPLAINT AND
JURY DEMAND

-against-

THE CITY OF NEW YORK, POLICE SERGRANT DONNIE SCHNEIDER, SHIELD #2141, POLICE OFFICER NICHOLAS VENTIMIGLIA SHIELD #12331, JOHN DOE #1-4

Docket No.

Defendants.

------------------------------------------------------------------ x

Plaintiff DESMOND DAVIS, by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights.

2. The claim arises from a July 22, 2011 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, excessive force, false arrest, and false imprisonment.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Queens County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Sergeant Donnie Schneider, Shield # 2141, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Schneider was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Schneider was under the command of the 101st precinct and is sued in his individual capacity.

11. Officer Nicholas Ventimiglia, Shield # 12331, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Ventimiglia was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Ventimiglia was under the command of the 101st precinct and is sued in his individual capacity.

12. All other individual defendants ("the officers"), including John Doe #1-4, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

13. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

14. Plaintiff resides in a private home in Far Rockaway New York with his grandfather, grandmother, and younger brother.

15. At approximately 1:10 am on July 22, 2011, plaintiff received a phone call from a friend telling him that people were looking for his brother.

16. Plaintiff's brother was not home, so plaintiff went outside to determine what who was looking for him.

17. Outside his home, plaintiff spoke with a girl who alleged that plaintiff's brother had stolen her property. Plaintiff explained that his brother was not home, but that when he returned, plaintiff would confront him about the allegation.

18. A few minutes later, police officers including defendants arrived.

19. Plaintiff agreed to speak with the officers on his front lawn. The defendants asked where plaintiff's brother was. Plaintiff told them that his brother was not home, and that he did not know where his brother was.

20. Defendants announced that they would just look around the house to make sure he was not there. Plaintiff immediately verbally objected and instructed them not to enter the house.

21. Ignoring plaintiff's objections, defendants approached the house apparently intending to open the door.

22. Plaintiff's dog was present and unrestrained inside his home at the time. Plaintiff was concerned how the dog would react to the uninvited entrance by police officers. Accordingly he warned the officers that his dog was inside, ran ahead of the officers, reentered his home, and closed the screen door to separate his dog from the officers. After the door closed, plaintiff was inside his home, behind the screen door.

23. Defendants forced open the screen door. Defendant Schneider then grabbed plaintiff by his neck and yelled at plaintiff for shutting the door. As Schneider grabbed him, plaintiff's necklace was ripped from his neck. Plaintiff was never able to locate the necklace after the incident.

24. The officers then entered plaintiff's home. At no time did the defendants have plaintiff's consent to enter his home, nor did they have a warrant or other legal basis to violate his fourth amendment rights.

25. Plaintiff's grandparents then appeared. They each confirmed that plaintiff's brother was not home.

26. One of the officers took plaintiff's grandfather outside to speak with him. Plaintiff

remained in the kitchen of his home with his grandmother and the remaining officers.

27. As plaintiff waited, he tried to explain that he had closed the door because he was worried about his dog.

28. Defendant Schneider instructed plaintiff to step outside with him. Plaintiff asked defendants why he was he being asked to step outside.

29. In response to plaintiff's question, defendant Schneider grabbed plaintiff by his midsection, and threw him across the room.

30. While he was off balance from being thrown across the room, defendants forcibly hit plaintiff on his head and used a chemical spray on him causing his eyes to burn. Plaintiff fell to the ground as a result of defendants' actions.

31. As plaintiff lay on the ground, defendants punched and kicked him multiple times.

32. At no time did plaintiff resist arrest, or attempt to assault any of the officers.

33. The assault committed against plaintiff lasted several minutes. As a result plaintiff suffered a severe cut to his head as well as bruises and cuts to various parts of his body.

34. When the assault was completed, plaintiff was placed under arrest and taken to the police precinct.

35. During the arrest defendants applied handcuffs to restrain plaintiff. These handcuffs were overly tightened to cause pain to plaintiff. Plaintiff in fact suffered pain, cuts and swelling in his wrists and hands as a result of the overly tightened handcuffs.

36. At the precinct plaintiff was seen by medical staff and an ambulance was called to take him to St. Johns Hospital.

37. At the hospital plaintiff received two staples to close the laceration on his head. He was also treated for contusions to both wrists and both knees.

38. Plaintiff was held in police custody until he was arraigned and released on the morning of July 24, 2012. Plaintiff spent over 48 hours in police custody.

39. Plaintiff was charged with obstructing governmental administration and resisting arrest. These charges were brought even though defendants lacked probable cause to believe plaintiff had committed any crime.

40. All charges against plaintiff were eventually dismissed.

41. Plaintiff's brother was in fact not in plaintiff's home at the time of the illegal entrance. Upon information and belief, he was arrested at another location at approximately the same time the officers entered plaintiff's home.

42. As a result of the force used against plaintiff, plaintiff suffered serious physical injuries which required emergency room treatment.

43. At the time of his arrest, plaintiff was working as a security guard. He had been scheduled to work the morning of his arrest. As a result of his arrest, plaintiff was terminated from his job and suffered lost wages until he was able to obtain new employment.

44. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

## DAMAGES

45. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the

United States Constitution to be free from an unreasonable search and seizure of his person;

b. Violation of his rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

c. Physical pain and suffering:

d. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

e. Loss of liberty;

f. Loss of property;

g. Economic loss.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

46. The above paragraphs are here incorporated by reference.

47. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 USC § 1983.

48. Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiff of his right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

49. Defendants falsely arrested plaintiff, used excessive force against plaintiff, and failed to intervene in each other's obviously illegal actions.

50. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION

## (MUNICIPAL AND SUPERVISORY LIABILITY)

51. The above paragraphs are here incorporated by reference.

52. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

53. Moreover the City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, the City has failed to properly train its employees and/or ensure that they are sufficiently informed regarding the policies and procedures of the City. The defendant officers had no legal basis to enter plaintiff's home yet were apparently unaware of or unconcerned with the fact that they were not legally permitted to enter plaintiff's home. This evidences a failure in the training of these officers which led to the violations of plaintiff's rights.

54. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging

instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

55. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

56. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

57. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of

the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

58. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

59. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

60. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 13, 2012
Brooklyn, New York

Respectfully yours,

*/s/ Nicholas Mindicino*

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Sergeant Donnie Schneider Shield # 2141
NYPD – Highway Patrol
198-15 Grand Central Parkway
Hollis, NY, 11423

Officer Nicholas Ventimiglia Shield # 12331
NYPD – 101st Precinct
16-12 Mott Avenue
Far Rockaway, NY, 11691